[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13044

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01235-CV-ORL-31-KRS

COLLEEN DEMERS,

Plaintiff-Appellant
Cross-Appellee,

versus

ADAMS HOMES OF NORTHWEST FLORIDA, INC.,
A Florida corporation,

Defendant-Appellee
Cross-Appellant,

MATTHEW MALONE,
individually,

Defendant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 20, 2009)

Before BARKETT, PRYOR and FARRIS,[*] Circuit Judges.

PER CURIAM:

Colleen Demers appeals following a jury trial, verdict, and final judgment in an action under the Family Medical Leave Act and Title VII of the Civil Rights Act of 1964. Defendant Adams Homes cross-appeals.

## APPEAL

**I. Summary judgment on Count 1 was proper.**

"We review a district court's grant of summary judgment de novo, applying the same legal standards that controlled the district court's decision" and "with all evidence and reasonable factual inferences viewed in the light most favorable to the nonmoving party." *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998).

Demers argues that summary judgment on Count 1 was predicated on the district court's erroneous beliefs that monetary damages are necessary to sustain a cause of action under the FMLA and that it had discretion to deny equitable relief.

The FMLA's "§ 2617 provides no relief unless the employee has been

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

prejudiced by the violation" in some way. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The district court did not hold that Demers had to prove monetary damages, but rather that she had to prove some damages. Adams Homes violated the FMLA by denying her leave, but Demers cannot articulate any harm suffered from this denial. Plaintiffs may not recover for "technical infractions under the FMLA . . . in the absence of damages." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999). The judgment was appropriate.

The district court had discretion to deny equitable relief. Under the applicable language of the FMLA, "[a]ny employer who violates section 2615 of this title *shall* be liable to any eligible employee affected for such equitable relief as *may* be appropriate." 29 U.S.C. § 2617(a)(1)(B) (emphasis added). Demers argues that the "shall" indicates that equitable relief was not discretionary. However, the "may" clause indicates the contrary; equitable relief may or may not be appropriate. As the Supreme Court has explained, "[t]he remedy is tailored to the harm suffered." *Ragsale*, 535 U.S. at 89. The question of appropriateness is left to the trial court's discretion.

**II. The court did not err in instructing the jury or in denying Demers' motion for judgment as a matter of law with respect to Count 2.**

3

We reverse a denial of a motion for judgment as a matter of law "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1276 (11th Cir. 2008).

The facts do not point overwhelmingly in favor of either party. There was evidence that other women received maternity leave, and that Adams Homes was a family friendly company. Upon this record, a jury could have reasonably found that Demers did not complain about the denial of her leave request, or that she did complain, but was terminated for a different reason.

## III. The court erred in vacating the jury verdict for $5,000 in punitive damages.

We "review[] the award of damages in a Title VII case for an abuse of discretion," but "review[] de novo all underlying questions of law." *EEOC v. W&O, Inc., d.b.a. Rustic Inn, Inc.*, 213 F.3d 600, 610 (11th Cir. 2008).

A plaintiff may recover punitive damages under Title VII if the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" *Rustic Inn*, 213 F.3d at 611

4

(citations omitted).

The jury awarded Demers $5,000 in punitive damages. The district court granted a motion to vacate the award, on the theory that Adams Homes acted in "a good faith mistaken belief based on incorrect legal advice" and without malice or reckless indifference.

In *Rustic Inn*, we upheld punitive damages against a restaurant defendant that forbade women from acting as servers after five months of pregnancy. 213 F.3d at 612. Even though the restaurant purportedly designed the policy to protect pregnant women from the dangers of carrying trays, and even though the restaurant contacted the Department of Labor for advice and examined the pregnancy policies of other restaurants, a finding of malice or reckless indifference was not unreasonable. *Id.* at 610. Evidence permitting the inference of malice or indifference included testimony that the defendant knew of the FMLA yet failed to draft its policy according to the FMLA model. There were also comments by managers suggesting they were "from the 'old school' and believed that a pregnant woman who was showing should not wait tables." *Id.* at 607, 612.

Demers presented similar evidence. Testimony showed that Adams Homes knew of the FMLA, yet failed to adopt the FMLA model. Demers alleged that Malone made discriminatory comments about pregnant women similar to the

comments in *Rustic Inn*. Other evidence could be deemed by a trier fact to raise a question regarding Adam Homes' good faith belief that Demers was an independent contractor. She received an employee discount that was unavailable to contractors such as plumbers, and she along with other salespeople received company memoranda circulated to "All Employees."

A reasonable trier of fact could find that Adams Homes acted with malice or reckless indifference, and thereby justify punitive damages. Vacating the punitive award was error.

## IV. The district court did not err when it reduced Demers's demand for attorneys fees and costs.

We "review the district court's award of attorneys' fees and costs for abuse of discretion." *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir.2006).

The trial court cited its reasons for reducing Demers's attorneys' fees and costs. First, Demers had the opportunity to submit expert opinion on market rates, but failed to do so. Second, Demers presented no evidence as to what rates would be reasonable. Third, most of Demers's claims were unsuccessful. Where a plaintiff succeeds on only some of her claims, fees expended on "discrete and unsuccessful claims" should be deducted. *Duckworth v. Whisenant*, 97 F.3d 1392,

6

1397 (11th Cir. 1996). "The district court may attempt to identify certain hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensely v. Eckerhart*, 461 U.S. 424, 436-37 (1983). Demers succeeded on just one of four counts, and recovered $95,000 of the $1.5 million she originally sought. The reduction was not an abuse of discretion.

**CROSS APPEAL**

**I. The district court did not err by issuing a partial summary judgment holding that Demers was an employee and not an independent contractor.**

Adams Homes argues that the district court erred when it issued a partial summary judgment finding that, for purposes of both the FMLA and Title VII, Demers was an employee, not an independent contractor.

Adams Homes succeeded on both FMLA counts. To the extent the partial summary judgment defined Demers's status under the FMLA, the appeal is moot.

Title VII unhelpfully defines an "employee" as "an individual employed by an employer ...." 42 U.S.C.A. § 2000e(f). Since Congress did not define the term more specifically, we "may well assume that Congress intended the term 'employee' to be given its common, everyday meaning." *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir. 1982). We construe "employee" "in light of general common law concepts" taking into account the "the economic realities of

7

the relationship." *Id.* The determinative factors are "common law principles of agency and the right of the employer to control the employee." *Id.* at 341.

Adams Homes argues that summary judgment was inappropriate since material facts regarding control were in dispute. However, the purported disputes are mostly semantic distinctions. Viewed in the light most favorable to Adams Homes, the facts demonstrate that Adams Homes exerted significant control over Demers. Adams Homes claims it did not *require* professional dress, but merely *asked* for professional dress, allowing salespeople to wear what they pleased, "subject" to guidelines. The other purported distinctions are similarly unavailing. Adams Homes argues it permitted salespeople to set their own schedule, "as long as they follow [Adams Homes'] parameters." Yet the parameters were stringent: Demers had to staff the office "a minimum of 5 days per week, including Saturday and Sunday." She was limited to two weeks vacation per year. She had to provide "ample notice" before taking vacation. She could not take her two weeks consecutively. She could not take vacation more than one weekend a month.

Other undisputed evidence further demonstrates Adams Homes' significant control over Demers. Demers could not sell homes other than those of Adams Homes. She had to attend weekly sales meetings. She had to call, meet, and invite to lunch realtors a minimum number of times per month. She had to submit

8

weekly reports. She had to submit substitute staffing for approval. She received instruction on language to use in sales pitches.

There were also undisputed indications that Adams Homes perceived Demers as an employee. Adams Homes provided Demers with supplies and promotional materials, paying for salespeople's pagers, sales office phones, contracts, promotional brochures, and business cards. Demers received memos addressed to "all employees." She purchased a home at an "employee discount" that was unavailable to contractors such as plumbers.

Adams Homes is correct that some material issues were in dispute, such as whether it told Demers where to park her car, to what extent Demers is a skilled professional, and to what extent Demers was reimbursed for certain business related expenses. There were also disputed issues regarding Demers' income tax treatment. Yet viewing these disputed facts in the light most favorable to Adams Homes, Demers was an employee. Summary judgment was proper.

**II. A reasonable juror could conclude that Demers engaged in a Title VII protected activity by opposing Malone's discrimination against her on the basis of pregnancy.**

Title VII's retaliation provision makes it unlawful "to discriminate against any individual ... because [s]he has opposed any practice made an unlawful

employment practice by" the Act. 42 U.S.C. § 2000e-3(a). It is unlawful under the Act to discriminate on the basis of pregnancy. See 42 U.S.C. §2000e-(k). Thus, to sustain a retaliation claim, Demers had to prove that Adams Homes discriminated against her because she opposed the discriminatory treatment of her pregnancy. Adams Homes argues that she did not present evidence sufficient for a reasonable trier of fact to conclude she "opposed" any discrimination.

The Supreme Court has held that the term "oppose" in this context takes its ordinary meaning: "to resist or antagonize ...; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, --- S.Ct. ----, 2009 WL 160424 at *3 (2009). In *Crawford*, an employee engaged in protected activity where she disclosed discrimination not on her own initiative, but in response to an internal investigation. *Id.*

Even after *Crawford*, to engage in protected activity, the employee must still, "at the very least, communicate her belief that discrimination is occurring to the employer," and cannot rely on the employer to "infer that discrimination has occurred." *Webb v. R & B Holding Co., Inc.*, 992 F.Supp. 1382, 1390 (S.D.Fla. 1998). A simple request for maternity leave would not suffice, because it alone would not announce opposition to the discriminatory basis for its denial. *See*

10

*McCormick v. Allegheny Valley Sch.*, 2008 WL 355617, \*17 (E.D. Pa. 2008).

Demers testified that during a January 9, 2006 meeting, Porter informed her that Adams Homes would deny her request for maternity leave. To explain, Porter relayed Malone's openly discriminatory statement: "The problem with pregnant women is that you don't know if they'll come back to work after having the baby."

Demers testified that, in response, "I asked [Porter] if I could [contact Malone], and she said I could." In this context, expressing an intent to speak with Malone also expressed her resistance to or antagonism toward the substance of his statement. A reasonable juror could infer that Demers's expressed intent was an announcement of her opposition.

Porter testified: "I also explained to [Demers] at that time it was just as if a man went out on back surgery." A reasonable juror could conclude that Porter's explanation was a response to Demers's assertion that her request was being denied on a discriminatory basis.

**III. The court did not abuse its discretion when it instructed the jury on Demers's employee status, excluded independent contractor evidence, and admitted "me too" evidence.**

Adams Homes argues that the trial court abused its discretion with respect to three evidentiary rulings and that the cumulative impact of these rulings was

11

prejudicial. "We review a district court's rulings on the admissibility of evidence for abuse of discretion and will reverse only if the moving party establishes a substantial prejudicial effect." *Morgan v. Family Dollar Stores, Inc.*, --- F.3d ----, 2008 WL 5220263, n.75 (11th Cir. 2008). Adams Homes' argument fails. None of the evidentiary rulings was an abuse of discretion.

## 1. Jury instruction regarding Demers's employee status

Adams Homes twice suggests that the trial court abused its discretion by issuing its preliminary jury instruction that Demers was an employee rather than an independent contractor. Adams Homes failed to make the argument in its briefs. The argument is waived. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004).

## 2. Independent contractor evidence

Adams Homes argues that the court abused its discretion by denying admission of evidence of its good faith belief that Demers was an independent contractor and not an employee. Where a plaintiff establishes a prima facie claim of retaliation under Title VII, the burden shifts to the defendant to present a "legitimate, nondiscriminatory business reason" for the employment decision. *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001). A good faith belief that Demers was an independent contractor is not a "legitimate, non-

12

discriminatory business reason" for terminating her. The evidence would tend to prove merely that Adams Homes did not believe that Demers was protected by Title VII. As is well-established, ignorance of the law is not a defense. *See U. S. v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971).

On appeal, Adams Homes argues that it sought to introduce the evidence to provide context for its decision to refuse Demers's maternity leave request. However, such context is irrelevant to Count 4. Count 4 is a retaliation cause of action and therefore concerns Demers's termination following her opposition to discrimination, not the incident giving rise to her opposition. Evidence regarding the reason for denying leave is irrelevant, as the truth or falsehood of the alleged discrimination does not tend to prove or disprove the fact of subsequent retaliation. *See* F.R.E. 401.

## 3. "Me too" evidence

Adams Homes argues that the testimony of three former employees regarding Malone's discriminatory actions was inadmissable under F.R.E. 404(b). Under F.R.E. 404(b), "[e]vidence of other crimes, wrongs, or acts . . . may . . . be admissible for . . . purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." F.R.E. 404(b). The Supreme Court has held that wide evidentiary latitude must be

13

granted to those attempting to prove discriminatory intent and that "the trier of fact should consider all the evidence." *U.S. Postal Serv. v. Aikens*, 460 U.S. 711, 714 n.3 (1983). Those discriminated against will often not be able to rebut a plausible cover-up with direct evidence, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *Id.* at 716. Thus, discriminatory intent may be proven by direct or circumstantial evidence, such as that admitted under 404(b). *Vance, v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989).

We have approved the use of "me too" evidence under F.R.E. 404(b) in discrimination and retaliation cases. See *Bagby*, 513 F.3d at 1285. In *Bagby*, a Title VII and civil rights statute racial discrimination and retaliation suit, the trial court admitted "me too" evidence from four employees, each of whom was discharged in circumstances very different from the plaintiff's. Their testimony was admissible under Rule 404(b) in order to, among other things, demonstrate the racial intent of a common decisionmaker. *Id.* at 1286.

Adams Homes argues that there was no common decisionmaker here, because Porter gave unrebutted testimony that she—and not Malone—decided to fire Demers. This argument fails to recognize that the "me too" testimony was circumstantial evidence that rebuts Porter's assertion. It tended to prove that

14

Malone was a common decisionmaker and was probative of his discriminatory intent.

## IV. Demers's attorneys' fees award should not be reduced.

Adams Homes suggests that Demers's attorneys' fees award should be further reduced. It does not properly raise the issue on cross-appeal. The argument is waived. *See McFarlin*, 381 F.3d at 1263.

## <u>CONCLUSION</u>

We affirm, except that we reinstate the jury's award of $5,000 in punitive damages.

**AFFIRMED** in part; **REVERSED** in part.

15