[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10054
_____

D.C. Docket No. 2:07-cv-02172-CLS

TONDALAYA EVANS,

Plaintiff-Appellant
Cross Appellee,

versus

BOOKS-A-MILLION,

Defendant-Appellee
Cross Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(August 8, 2014)

Before JORDAN, Circuit Judge, and RYSKAMP,[*] and BERMAN,[**] District
Judges.

---

[*] Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District
of Florida, sitting by designation.

[**] Honorable Richard M. Berman, United States District Judge for the Southern District of
New York, sitting by designation.

RICHARD M. BERMAN, District Judge:

This is an appeal from a lawsuit brought by Tondalaya Evans ("Evans" or "Appellant") against her employer, Books-A-Million ("Books-A-Million" or "Appellee"), a national book retailer, alleging violations of the Family and Medical Leave Act ("FMLA"), the Equal Pay Act, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Evans complained in the district court that Books-A-Million (1) interfered with her right to take parental leave by forcing her to work from home immediately after she gave birth on August 30, 2006; (2) discriminated against her on the basis of gender by altering her job title and responsibilities, withholding her annual bonus, and ultimately terminating her employment; (3) retaliated against her for complaining about gender and race discrimination in the workplace; (4) paid her less than male employees doing the same work as she did; and (5) failed to provide her with notice of her right to continuation of her dental insurance following her termination.

The district court granted summary judgment in favor of Books-A-Million as to all of Evans' claims except her claim under COBRA. And, following a bench trial of Evans' COBRA claim, the district court concluded that Books-A-Million had intentionally violated COBRA and assessed a statutory penalty against Books-

2

A-Million of $75 per day. The court also awarded Evans attorneys' fees totaling $42,192.58 and costs totaling $2,910.87 for the COBRA violation.

Evans appeals from the district court's dismissal of her claims on summary judgment and from the district court's exclusion of litigation expenses (in the total amount of $2,460.67) from its post-trial award of attorneys' fees. Books-A-Million cross-appeals from the district court's finding of an intentional COBRA violation by Books-A-Million and from the district court's assessment of a COBRA penalty.

For the reasons that follow, we hold that the district court correctly awarded summary judgment to Books-A-Million with respect to Evans' claims under Title VII and the Equal Pay Act, and did not abuse its discretion by assessing a statutory COBRA penalty against Books-A-Million. We also hold that the district court erred by dismissing Evans' FMLA claim and by refusing to consider her additional litigation-related expenses of $2,460.67 as part of an attorneys' fee award. Accordingly, we AFFIRM in part, and VACATE and REMAND in part, the judgment of the district court.

## I. BACKGROUND

We recount the facts in the light most favorable to Evans. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (summary judgment); *United*

3

*States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1084 (5th Cir. 1978) (bench trial).

Evans was employed by Books-A-Million for ten years from 1997 to 2007, initially as a staff accountant and, later, as Payroll and Insurance Manager. Books-A-Million paid Evans a salary of $54,500, with the opportunity for an annual cash bonus. Evans' supervisor was Books-A-Million's Director of Finance, Sandi Meeks ("Meeks").

In January 2006, Evans advised Books-A-Million that she was pregnant. At the time, Evans was involved in the implementation of a new payroll system ("ADP system"), which was anticipated to "go live" by August 2006. In June 2006, she approached Meeks to discuss the necessary paperwork for her FMLA maternity leave, which Evans had intended to become effective on her due date, September 1, 2006. Meeks told Evans that she and other Books-A-Million supervisors had decided that Evans "would not go on leave but would work while on maternity leave." Evans was given a new laptop computer that would enable her to work from home after her delivery.

Although Evans told Meeks on several occasions that she intended not to work after the birth of her child, Meeks repeatedly told Evans that she "really needed" Evans to continue to work on the ADP system, the "go live" date for which had, in mid-August, been delayed to November 2006. Meeks also told

4

Evans that the (successful) implementation of the ADP system would account for fifty percent of Evans' annual bonus. Given Meeks' insistence, Evans felt she had "no choice" but to continue to work from home after the birth of her child.

Evans' last day at the office before giving birth was Tuesday, August 29, 2006. She gave birth the next day. Upon arriving home from the hospital with her newborn on Friday, September 1, 2006, Evans **immediately** began answering work-related calls from Books-A-Million employees. She worked throughout the weekend and thereafter. On Monday, September 4, 2006, Meeks began emailing to Evans additional work assignments. And, from September 1 until October 31, 2006, Evans was required to work nearly full-time from home, on some occasions for more than eight hours per day. During this period, Meeks also required Evans to attend meetings regarding the ADP system at Books-A-Million's offices. Evans was paid her full salary while she worked from home.

During October 2006, Meeks began to express some frustration and disappointment with the progress being made implementing the ADP system. For example, on October 19, 2006, Meeks told Evans that "[w]e are unacceptably behind in this project, and this needs to be completed." On another occasion in October 2006, Meeks became angry and hostile when Evans informed her that she did not have time to work on an additional payroll project. Prior to October 2006,

5

Evans had never received any negative evaluations or "write-ups." Ultimately, the ADP system went "live" on January 2, 2007, and was a success.

Evans returned to work at the Books-A-Million offices on October 31, 2006, a week and a half earlier than she had originally planned. Upon Evans' return, Meeks' attitude toward her was cold and hostile. In November 2006, Meeks and Books-A-Million's Chief Financial Officer, Doug Markham, determined to reassign Evans from her position as Payroll and Insurance Manager to a newly-created position, Risk Manager, which at the time, though it did not have clearly-defined responsibilities, did not include payroll duties. Unbeknownst to Evans, Books-A-Million had advertised the new position of Payroll Manager and met with candidates for this position, which included **all** of Evans' payroll duties.

On March 13, 2007, Evans learned about the job posting for Payroll Manager, and asked Meeks for an explanation. Meeks told Evans that Books-A-Million was looking for a Payroll Manager because "she wasn't pleased with the ADP implementation." Evans responded that the ADP implementation occurred in substantial part while she was at home with her newborn.

Evans was not interested in the new Risk Manager position because she had accumulated ten years of experience in payroll management and wanted to have a career in that field. By contrast, Evans had no experience in risk management. Evans was also told by Meeks that her responsibilities as Risk Manager would

6

include travel, which Evans viewed as incompatible with the care of her newborn child.

On March 23, 2007, Meeks informed Evans that she had been formally reassigned to the Risk Manager position. On March 26, Evans spoke with Books-A-Million officers Doug Markham and Chad Tice, and told them that she was not interested in becoming Risk Manager and that she wanted to retain her payroll responsibilities. Evans spoke again with Markham and Tice the following day, and (again) voiced her opposition to the Risk Manager position. Markham and Tice informed Evans that her choice was either to accept the Risk Manager position or to resign. Evans did not accept the Risk Manager position, and she was terminated by Books-A-Million on March 27, 2007.

At the time Evans was terminated, Tice informed her that she would not be eligible for a year-end bonus (for 2006). The reason given was that, in order to be eligible for the bonus, an employee had to have been employed on the date the Company's Audit Committee voted to approve the Company's annual financial statements. Further, the Audit Committee met to approve the annual financial statements for fiscal year 2006 on March 29, 2007, two days **after** Evans was terminated. Following her termination, Evans did not receive a COBRA notice relating to continuation of her dental insurance.

On March 6, 2009, Books-A-Million filed a motion for summary judgment seeking dismissal of all of Evans' claims except her claim under COBRA. On April 6, 2010, the magistrate judge issued a Report and Recommendation, recommending that the district court grant Books-A-Million's motion in its entirety. The magistrate judge concluded that Evans' FMLA claim should be dismissed because Evans was paid her full salary while she worked from home, and, therefore, she "has not established that she suffered any legal damages."[1] In an eight-page Memorandum Opinion, dated September 22, 2010, the district court adopted the magistrate judge's Report and Recommendation in its entirety.[2]

Evans' COBRA claim proceeded to a bench trial. Following the trial, the district court, in a Memorandum Opinion dated October 29, 2012, concluded that Books-A-Million had intentionally violated Evans' COBRA rights by failing to send Evans the required notice relating to her dental insurance. Exercising its discretion under 29 U.S.C. § 1132(c)(1), the district court assessed a statutory penalty of $75 per day against Books-A-Million for its intentional COBRA violation, covering the period May 11, 2007 to September 7, 2008. The district court also awarded Evans attorneys' fees of $42,192.58 and costs of $2,910.87

---

[1] The magistrate judge also recommended that the district court strike certain portions of Evans' affidavit testimony as "conclusory and speculative." (*See* discussion at pp. 12–13, *infra*.)

[2] The district court's opinion included a brief discussion of Evans' claims under the Equal Pay Act and Title VII, but did not analyze Evans' FMLA claim.

under 29 U.S.C. § 1132(g)(1).  It disallowed expenses Evans incurred totaling $2,460.67 for legal research, court-ordered mediation, postage and travel, on the grounds that such expenses are not recoverable under 28 U.S.C. § 1920.

Evans raises the following issues on appeal: (1) whether the district court abused its discretion in striking certain portions of her summary judgment affidavit; (2) whether the district court erred in dismissing her FMLA claim; (3) whether the district court erred in dismissing her Equal Pay Act claim; (4) whether the district court erred in dismissing her Title VII discrimination and retaliation claims; and (5) whether the district court abused its discretion in excluding $2,460.67 from COBRA-related attorneys' fees.

In its cross-appeal, Books-A-Million contends that: (1) the district court clearly erred in finding an intentional COBRA violation; and (2) the district court's assessment of a $75 per day COBRA penalty was an abuse of discretion.

## II. DISCUSSION

The Court reviews a district court's grant of summary judgment *de novo*, drawing all inferences in favor of the non-moving party.  *Fisher v. State Mut. Ins. Co.*, 290 F.3d 1256, 1259–60 (11th Cir. 2002).  "Genuine disputes [of material fact] are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must

9

have a real basis in the record." *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

### (1) Evans' Affidavit Testimony

The Court applies an abuse of discretion standard when reviewing a district court's decision to strike affidavit testimony on summary judgment. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004).

Evans argues that the district court abused its discretion in striking portions of her summary judgment affidavit which stated: (1) "Males with less experience in the finance department of the company that were managing only one department were making more money than me."; (2) "[Male employees] were able to advance more quickly financially [than] I was."; and (3) "Dickson could not perform his job and had duties taken away from him and suffered no cut in his pay or bonus."

The district court did not abuse its discretion in finding that these statements were conclusory and speculative. Evans' affidavit did not provide specific, supporting facts regarding, for example, the amount of other employees' salaries compared to hers, the details of other employees' financial advancement, or Mr. Dickson's job performance, duties and evaluations. *See Rogers v. Evans*, 792 F.2d 1052, 1062 n.9 (11th Cir. 1986) (concluding that the district court properly granted a motion to strike an affidavit where the statements in the affidavit were "phrased

10

in conclusory terms without citing facts"). We affirm the district court's ruling on this issue.

## (2) FMLA Interference Claim

Congress enacted the FMLA to "balance the demands of the workplace with the needs of families" and "to promote the stability and economic security of families." 29 U.S.C. § 2601(b)(1). The FMLA requires employers to provide eligible employees with up to twelve weeks of unpaid leave to care for a newborn child. *See* 29 U.S.C. § 2612. It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," FMLA rights. 29 U.S.C. § 2615(a)(1); *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1273-74 (11th Cir. 2012).

To prove FMLA interference, Evans must demonstrate "that [she] was denied a benefit to which [she] was entitled under the FMLA," *Martin v. Brevard Cnty. Pub. Sch.,* 543 F.3d 1261, 1266–67 (11th Cir. 2008), and that she "has been prejudiced by the violation in some way." *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002); *see McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 7 (D.C. Cir. 2010) ("[Plaintiff's] burden is to show both that her employer interfered with . . . the exercise of or the attempt to exercise, any right

11

provided by the FMLA . . . and that she was prejudiced thereby." (internal citation and punctuation omitted)).

The district court's dismissal of Evans' FMLA interference claim on summary judgment was unrelated to whether Books-A-Million had, in fact, interfered with Evans' maternity leave.  Rather, the denial of Evans' claim was based solely upon the conclusion (initially reached by the magistrate judge) that Evans had suffered no "legal damages" because she was paid for her work: "Because the plaintiff cannot establish that she suffered any loss of income as a result of BAM's interference with her FMLA leave, she cannot state an FMLA claim."[3]

The district court's adoption of the magistrate judge's conclusion that "[b]ecause the plaintiff cannot establish that she suffered any loss of income . . . she cannot state an FMLA claim" was error.  The FMLA provides explicitly for two (distinct) categories of remedies: (1) "damages," including compensation, benefits, and other monetary losses sustained by reason of the violation, § 2617(a)(1)(A); and (2) **"such equitable relief as may be appropriate, including employment, reinstatement, and promotion."**  29 U.S.C. § 2617(a)(1)(B)

---

[3] The magistrate judge also concluded that the evidence adduced on summary judgment demonstrated, at the very least, that Evans' supervisors discouraged her from taking maternity leave.  *See* 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.").

12

(emphasis added).   While the appropriateness of a particular equitable remedy is "left to the trial court's discretion," *Demers v. Adams Homes of Northwest Fla.*, Inc., 321 F. App'x. 847, 849 (11th Cir. 2009), the court must consider the individual facts and circumstances of a plaintiff's case, and must not refuse even to consider equitable relief.  *See Ragsdale,* 535 U.S. at 89; *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1297 (11th Cir. 2013).  Moreover, "[i]f a trial court refuses to grant further legal or equitable relief to a plaintiff who insists that such relief is necessary to make the plaintiff whole, it must articulate its rationale." *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1052 (11th Cir. 1989). In this case, although Evans requested several forms of equitable relief in her complaint, the magistrate judge and the district court failed to consider the availability of such relief, and appear to have ignored 29 U.S.C. § 2617(a)(1)(B) entirely.[4]

The magistrate judge appears to have based his conclusion that, absent damages for unpaid salary, Evans could not state an FMLA claim given this Court's unpublished decision in *Demers*.  But *Demers* does not hold that an FMLA plaintiff must demonstrate that she is entitled to traditional damages (as opposed to equitable relief) to survive summary judgment.  Such a requirement would render

---

[4] The equitable relief requested by Evans included "injunctive relief, reinstatement . . . front pay . . . and any and all such other relief the trier of fact may assess."

13

meaningless the plain language of the FMLA, which makes clear that equitable relief may be available, separate and apart from legal damages. 29 U.S.C. § 2617(a)(1)(B). In *Demers*, we held (only) that the plaintiff failed "to articulate any harm suffered" from the denial of his FMLA rights, *Demers*, 321 F. App'x at 849, relying upon the Supreme Court's language in *Ragsdale*, that an FMLA plaintiff must show that she "has been prejudiced by the violation in some way." *Ragsdale*, 535 U.S. at 89. The Supreme Court in *Ragsdale* did not suggest, much less conclude, that "prejudice" in the FMLA context is synonymous with "legal damages."

It is clear to us that, in order to prove that she was "prejudiced" by an FMLA violation, a plaintiff such as Evans need only demonstrate some harm remediable by either "damages" or "equitable relief." *See id.* ("The remedy is tailored to the harm suffered."); *Anderson v. Discovery Cmmc'ns., LLC*, 517 F. App'x 190, 198 (4th Cir. 2013) ("Such prejudice can be proven by showing that the employee . . . suffers some loss in employment status remediable through 'appropriate' equitable relief . . . .").

In addition to the question of whether Books-A-Million interfered with Evans' FMLA rights, there are other unresolved issues of material fact requiring a trial, such as whether Evans was "prejudiced" by any FMLA interference. Based upon the evidence adduced on summary judgment, a reasonable fact finder could

14

conclude that Meeks emphasized Evans' job performance while she was home with her newborn in deciding to reassign her to an inferior position with fewer responsibilities and opportunities for advancement.[5]  It seems plain to us that if an employer coerces an employee to work during her intended FMLA leave period and, subsequently, reassigns her based upon her allegedly poor performance during that period, the employee may well have been harmed by the employer's FMLA violation.[6]

And, the prejudice or harm allegedly suffered by Evans may well be remediable by reinstatement.  *See* 29 U.S.C. § 2617(a)(1)(B).  The district court may also consider the equitable remedy of "front pay" for an appropriate period if it determines that reinstatement is not viable in this case.  *Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 810-11 (8th Cir. 2013) (front pay is an equitable remedy under the FMLA); *Weatherly v. Alabama State University*, 728 F.3d 1263, 1271 (11th Cir. 2013) ("In deciding whether to award front pay, rather than

---

[5] In this connection, we disagree with the district court's conclusion that Evans' reassignment to the Risk Manager position, which involved the loss of her payroll responsibilities, was not an adverse employment action.  A transfer or reassignment may be adverse "if it involves a reduction in pay, prestige or responsibility."  *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (quoting *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000)).

[6] The decision to reassign Evans to the Risk Manager position appears to have been made almost immediately upon her return to Books-A-Million's offices, if not earlier.  A reasonable fact finder could conclude that Evans' reassignment constituted an unlawful act of interference with her FMLA right to be reinstated to her former position.  *See* 29 U.S.C. § 2614 (a)(1); *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001) ("[A]n employee returning from covered leave is entitled to be restored to [her] former position or its equivalent.").

reinstatement, courts look to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy.").

### (3) Title VII Claims

To establish a *prima facie* case of discrimination under Title VII, Evans had to show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees not of the protected class more favorably; and (4) she was qualified for the job. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000).

The district court correctly concluded that Evans failed to demonstrate a *prima facie* case of gender discrimination with respect to her termination and reassignment because she failed to identify any male employee(s) who rejected a reassignment and who were treated differently than she was. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). ("To make a comparison of the plaintiff's treatment to that of [male] employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects."). Evans similarly failed to identify any male comparator(s) who were not reassigned.[7]

---

[7] To the extent Evans' Title VII claim rests upon the withholding of an annual bonus, she failed to rebut Books-A-Million's explanation that she had to be employed by Books-A-Million

The district court also correctly dismissed Evans' retaliation claim under Title VII.  To demonstrate a *prima facie* case of retaliation, Evans must show that (1) she participated in a statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there is a causal connection between the two. *Butler v. Ala. Dept. of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008).  Evans failed to demonstrate that she engaged in any "protected activity" prior to her termination.

## (4) Equal Pay Act Claim

To establish a *prima facie* violation of the Equal Pay Act, Evans must have shown that she "performed substantially similar work for less pay" than her male colleague(s),  *Miranda v. B&B Cash Grocery Store*, *Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992), *i.e.*, whose job(s) involved "equal work" and required "equal skill, effort and responsibility."  *Id.*

Evans failed to establish a *prima facie* case of unequal pay.  With respect to the three male division heads within Books-A-Million's Finance Department, Evans has not shown that their positions involved "equal work" or required "equal skill, effort and responsibility."  *See Waters v. Turner, Wood & Smith Ins. Agency,*

---

on March 29, 2007, when the Audit Committee approved the company's 2006 financial statements.

17

*Inc.*, 874 F.2d 797, 799-800 (11th Cir. 1989) (plaintiff failed to make a *prima facie* case of unequal pay because the job responsibilities of the male comparators were greater than her job responsibilities).  With respect to Robert Altheide, who was hired as Books-A-Million's Risk Manager when Evans turned down the job, Evans cannot show similarity of work because she never worked as Risk Manager.  *See id.*

### (5) Attorneys' Fees

The fee-shifting provision of ERISA, 29 U.S.C. § 1132(g)(1), which applies to Evans' COBRA claim, provides for the recovery of "a reasonable attorney's fee" as well as the "costs of action."  As noted above, following a bench trial, the district court awarded Evans her attorney's fees plus $2,910.87 in costs, but it excluded additional expenses claimed by Evans totaling $2,460.67 (for mediation, legal research, postage and travel) on the grounds that these expenses "should be analyzed under [28 U.S.C.] § 1920" and are not recoverable as costs under that statute.  The question raised and briefed by the parties on appeal is whether these additional expenses, which the parties agree are not taxable as costs under § 1920, may nonetheless be awarded as attorneys' fees under 29 U.S.C. § 1132(g)(1).  This appears to be a question of first impression.

18

This Court has previously held that § 1132(g) should be interpreted consistently with similar language in other fee-shifting statutes. *See Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001). And, this Court has held that under 42 U.S.C. § 1988—which, like § 1132(g)(1), allows for a "reasonable attorney's fee"—a party may recover "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case." *A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999) (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)); *see also Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) ("[A]ttorney's fees include expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" (quoting *Northcross v. Bd. of Educ.,* 611 F.2d 624, 639 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980))); *Planned Parenthood of Cent. N.J. v. Attorney General of State of N.J.*, 297 F.3d 253, 267 (3d Cir. 2002) ("Out-of-pocket expenses are included in the concept of 'attorneys' fees' as 'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by § 1988."); *Associated Builders & Contractors of La., Inc. v. The Orleans Parish Sch. Bd.,* 919 F.2d 374, 380 (5th Cir. 1990) ("reasonable attorneys' fee" under § 1988 includes "reasonable out-of-pocket expenses . . . normally charged to a fee-paying client, in the course of providing legal services."). Indeed, the Supreme Court has

19

held that fee shifting statutes with language similar to § 1988 should be interpreted like § 1988.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Based upon these precedents, it would appear that the definition of costs under § 1920 is not controlling and that Evans' ($2,460.67) expenses for mediation, legal research, postage and travel may be awarded as attorneys' fees if the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation.  *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (permitting recovery under § 1988 of cost of services provided by clerks and paralegals).[8]  And, we see no reason to distinguish mediation fees from other expenses which may be recovered under § 1988.  *See Barnes*, 168 F.3d at 438; *see also Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1355 (S.D. Fla. 2006) ("Although mediation fees are not compensable under § 1920, they are compensable litigation expenses under the ADA.").  We therefore hold that

---

[8] This Court has applied the § 1988 reasonableness standard to travel expenses.  *See Barnes*, 168 F.3d at 439; *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012). Other circuits have held that reasonable expenses for legal research and postage may be awarded as attorneys' fees under § 1988.  *See United States ex rel. Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (computerized research expenses); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (reproduction and postage expenses); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (computer-assisted research expenses); *Northcross*, 611 F.2d at 639 (photocopying, travel, and telephone calls).  And, the Ninth Circuit has held that "reasonable charges for computerized research may be recovered as 'attorney's fees' under § 1132(g)(2)(D) if separate billing for such expenses is 'the prevailing practice in the local community.'"  *Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006) (quoting *Jenkins*, 491 U.S. at 287).

20

reasonable litigation expenses such as mediation, legal research, postage, and travel may be recovered under § 1132(g)(1) if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses. *See Jenkins*, 491 U.S. at 285-87 & n.9. Because the district court did not consider the prevailing practice in the local community or the reasonableness of Evans' expenses, we remand on this issue.

### (6) Intentional COBRA Violation

The district court's factual finding that Books-A-Million intentionally violated COBRA is reviewed for clear error. *Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006). Because the district court based its finding of intent largely upon its assessment of the credibility of Books-A-Million's witnesses, and because the evidence could have been seen in different ways, we find there was no clear error. "The credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011). Accordingly, we affirm the district court on this issue.

### (7) Statutory Penalty

21

The Court reviews a district court's award of statutory penalties under 29 U.S.C. § 1132(c) for abuse of discretion. *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir. 1990). ERISA authorizes penalties of up to $100 per day for COBRA violations. 29 U.S.C. § 1132(c)(1). In light of the district court's finding that Books-A-Million intentionally violated COBRA, we hold that the court acted within its discretion in awarding a $75 per day penalty.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's award of summary judgment with respect to Evans' Title VII and Equal Pay Act claims, its post-trial findings of fact, and its assessment of a statutory penalty. We **VACATE** the district court's award of summary judgment with respect to Evans' FMLA claim and its rejection of additional expenses as attorneys' fees. We **REMAND** the case for further proceedings consistent with this opinion.