[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11378
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cv-80289-RLR

SIMONE HAMILTON,

Plaintiff-Appellant,

versus

SIKORSKY AIRCRAFT CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 25, 2019)

Before ED CARNES, Chief Judge, TJOFLAT, and JORDAN, Circuit Judges.

PER CURIAM:

Simone Hamilton appeals the district court's grant of summary judgment to Sikorsky Aircraft Corporation on her claims of wage discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d); race, gender, and national origin discrimination in violation of the Florida Civil Rights Act, Fla. Stat. § 760.01(2), and 42 U.S.C. § 1981; retaliation in violation of the EPA, the FCRA, and § 1981; and breach of contract based on Executive Order 11246.  We affirm.

I.

The district court deemed admitted portions of the statement of facts that Sikorsky attached to its summary judgment motion because Hamilton did not comply with a local rule requiring her to challenge each statement she disputed. See S.D. Fla. L.R. 56.1(b) ("All material facts set forth in the movant's statement [of facts] . . . will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record.").  Hamilton does not contend on appeal that the district court abused its discretion by doing so.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009) ("We give great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion.") (quotation marks omitted).  Because "[i]ssues not raised on appeal are considered abandoned," AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1320 n.14 (11th Cir. 2004), we will view the

2

statements admitted by the district court as "the functional analog of an unopposed motion for summary judgment," Mann, 588 F.3d at 1303 (quotation marks omitted).[1]  Even so, we "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact," and we still draw all reasonable inferences and review all evidence in the light most favorable to Hamilton as the non-moving party on summary judgment.  Id. at 1303.

## II.

Hamilton is a black Jamaican female who worked as a software engineer for Sikorsky from November 2007 until her termination on October 7, 2015.  In January 2015 Hamilton transitioned from a pure software engineer position to a software supplier manager position as part of a new team that would, by late February, be supervised by Susan Vandermeys.  That team was based in Stratford, Connecticut, but Hamilton worked remotely from Sikorsky's West Palm Beach facility, as she had done with her previous assignments.

---

[1]  Hamilton responds to Sikorsky's waiver argument by noting that the district court did not completely strike her oppositional statement of facts and that therefore no "procedural default occur[ed]."  What she apparently means by this is that "the district court only expressly rejected several of [her] oppositional statements and otherwise fully considered the oppositional statement as well as material filed in opposition to the Rule 56 motion."  She does not challenge the district court's decision to do that (or its corollary decision to deem admitted certain of Sikorsky's factual statements), and such an argument in her reply brief would come too late anyway.  See United States v. Evans, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotation marks omitted).  In any event, Hamilton is correct that the district court deemed admitted only those statements by Sikorsky that Hamilton failed to dispute with relevant citations to the record.

3

Hamilton was classified as an L7 labor grade for her entire time with Sikorsky.  Jefferson Slayden acted as her on-site administrative supervisor in West Palm Beach and conducted her annual performance reviews with input from Hamilton's off-site team managers.  Each year he recommended Hamilton for merit pay increases, but he never backed her for a promotion to the next labor grade.  On January 30, 2015, soon after transitioning to the new team, Hamilton sent an e-mail to Slayden , Slayden's supervisor, and representatives from the human resources department requesting a promotion.  No one responded to the request.

Hamilton raised the issue again during her annual performance review with Slayden on March 11, 2015.  Slayden told her that the time for promotion recommendations had already passed before she sent the e-mail and that he did not approve employees for promotion unless they had achieved "Exceptional Performance" ratings for at least two years, which Hamilton had not.  (Slayden had rated Hamilton's overall abilities each year as "Fully Competent," which was a step below "Exceptional Performance.")  Although not a company policy, it is undisputed that Slayden consistently followed his "two EP ratings" rule and had recommended female and non-white employees for promotion when they met his requirements and did not recommend white males for promotion when they did not.

4

Two days after her performance review, on March 13, 2015, Hamilton sent an e-mail to Slayden claiming that she had been subject to retaliation and a lack of equal employment opportunities and asking how to report her grievances. Slayden directed her to contact HR. Hamilton e-mailed HR on March 30 and alleged that she was being paid less than her peers and that her manager from her former team (not Vandermeys) had suppressed her advancement. She also mentioned that she faced "subtle discrimination," though she did not explain what that meant or what form it took. HR conducted an investigation and determined that Hamilton was not due a promotion and that she had not faced discrimination.

During this same time period Hamilton was being trained in her new role as a software supplier manager by David King, the deputy software lead and cost account manager for Hamilton's new team. He and the other members of the team were classified as labor grade L5s — two labor grades above Hamilton — and had prior experience as software supplier managers. They also had greater job responsibilities than Hamilton did. Vandermeys initially thought that Hamilton was also an L5, but in February 2015 learned that she was an L7. Hamilton's position ordinarily would have required her to be an L5 as well, so Vandermeys scheduled a phone call with Hamilton for April 1 to discuss tailoring her job duties to make them appropriate for an L7.

5

In that phone conversation Vandermeys told Hamilton that she had spoken with Hamilton's former team manager and with Slayden, and then outlined her expectations of her team members.  The next day Hamilton sent an e-mail to Vandermeys questioning many of these expectations and stating that she felt "singled out" by Vandermeys' direction, that the timing of the phone call was "suspect," and that she "fe[lt] retaliated against."  Vandermeys forwarded the e-mail to HR.

In late June 2015 Hamilton sent an e-mail to Slayden informing him that she was going to use some of her vacation days.  Slayden responded by asking whether Hamilton's work would be affected by the time off and if Hamilton had told Vandermeys.  Hamilton replied that Slayden had never before asked her these questions and accused him of harassment and retaliation for asking them now.

HR set up a meeting with Hamilton and Slayden for June 29, 2015, to try to work out the conflicts that Hamilton was having with her team and with Slayden. Before the meeting Hamilton e-mailed a complaint to the general counsel, the senior vice president of HR, and the ombudsman of United Technologies Corporation (Sikorsky's parent company at the time) and told them that the HR managers at Sikorsky had not investigated her complaint properly.  She also e-mailed Slayden and the Sikorsky HR managers with whom she was about to meet to reiterate that she thought Slayden was harassing her and retaliating against

6

her by asking her to answer questions before he approved her requests for time off. Hamilton repeated those concerns at the meeting and expressed her opinion that she was being treated differently than her co-workers.

UTC launched a formal investigation of Hamilton's claims the next week and hired Dennis Aiken, a former employee and retired FBI agent, to produce a report. Aiken submitted his 45-page report on September 9, 2015. He found no evidence of discrimination or retaliation against Hamilton.

Two days later, on September 11, Vandermeys learned that Hamilton was causing some confusion by e-mailing internal questions to a supplier. She directed Hamilton to refrain from e-mailing any of the suppliers directly and to instead send all correspondence through King or Vandermeys. She then scheduled a phone conversation with Hamilton for September 16. The day before that conversation was to happen Hamilton requested a written description of her job responsibilities. Vandermeys provided this on the 16th and rescheduled the call for the 17th. Then Hamilton pushed the call back by two weeks, telling Vandermeys that she thought the phone call pertained to her HR complaint. Vandermeys then learned that Hamilton had contacted a supplier directly on September 15 — four days after Vandermeys had told her not to do that. Vandermeys again reached out to Hamilton to tell her not to have direct contact with any of the suppliers. Hamilton responded by saying the request was "ludicrous."

7

On September 28, 2015, Lisa Lafferty, the head of Sikorsky's HR group, e-mailed Hamilton to set up a meeting to discuss her conflict with Vandermeys. Hamilton responded to the e-mail on October 5 by saying that she did not want to discuss her complaint unless Lafferty first provided her with an outline, in writing, "stating what the content discussion o[f] [her] role going forward will be." Lafferty replied that she did not intend to discuss Hamilton's complaint, that the investigation of her complaint had already been completed, and that she instead wanted to discuss "the company's expectations of [Hamilton's] work performance, including [its] expectations of how to handle day to day interactions and requests from [Hamilton's] management team."  Hamilton again refused to meet, stating that she thought the meeting was scheduled because she had filed a complaint. Lafferty decided to terminate Hamilton's employment and wrote in her termination letter to Hamilton that Hamilton had "continued to refuse to follow direction and/or participate in meetings" and that her behavior had become "insubordinate and [was] not acceptable."

Hamilton sued Sikorsky, alleging that Sikorsky paid her substantially less than similarly situated male employees in violation of the Equal Pay Act, 29 U.S.C. § 206(d); discriminated against her on the basis of gender, race, and national origin in violation of the Florida Civil Rights Act and 42 U.S.C. § 1981; retaliated against her for complaining of discrimination in violation of the EPA, the

8

FCRA, and 42 U.S.C. § 1981; and breached its contract with the United States under Executive Order 11246 by discriminating and retaliating against her. The district court granted summary judgment to Sikorsky on all counts. Hamilton appeals.

### III.

We review de novo a district court's grant of summary judgment and draw all reasonable inferences and review all evidence in the light most favorable to the non-moving party. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225 (11th Cir. 2005) (quotation marks omitted).

Hamilton challenges the district court's grant of summary judgment on each of her four claims. We consider each in turn.

### A.

"An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." Steger

9

v. Gen. Elec. Co., 318 F.3d 1066, 1077–78 (11th Cir. 2003) (quotation marks omitted); see 29 U.S.C. § 206(d)(1).

Hamilton contends that Sikorsky violated the EPA by paying her less than her male colleagues. In support of her claim, and in response to Sikorsky's motion for summary judgment on the issue, she points to three pieces of evidence in the record: her declaration, Aiken's deposition testimony, and Vandermeys' deposition testimony. First, Hamilton asserted in her declaration that in 2012 she "did the same work as Joe Guadiana[,] who was an L6," and that in 2015 she "performed the same work as [her] white, male colleagues who were L5s" and "was still doing L5 work . . . to the end of [her] employment on October 7, 2015." Second, Aiken, the investigator hired by UTC, responded to a question in his deposition about whether Hamilton had job duties commensurate to those of an L5 by saying: "I personally don't know her job responsibilities were commensurate. But I was told that her job responsibilities were more similar to that of an L-5, and that's why they wanted to give her job responsibilities more similar to an L-7, which she was." And third, Vandermeys said in her deposition that she did not know that Hamilton was an L7 instead of an L5 when Hamilton first joined the team. Hamilton argues that, when viewed in the light most favorable to her, these three pieces of evidence are enough to raise a genuine dispute about whether she performed the same work as her higher-paid male colleagues.

10

We disagree.  Sikorsky has pointed to specific evidence in the record that shows that it is entitled to summary judgment on Hamilton's EPA claim.  In response to Hamilton's assertion that she made less than Guadiana did in 2012, Sikorsky provided the actual 2012 salaries of both Guadiana and Hamilton.  Hamilton's salary was higher.  Hamilton did not contest the numbers submitted by Sikorsky or offer anything else to support her conclusory statement that she was paid less than Guadiana.  Likewise, Sikorsky offered evidence showing that Hamilton's co-workers on her new team had job responsibilities that she did not.  For instance, in addition to training Hamilton, King acted as the software supplier manager for one of Sikorsky's major suppliers and as the primary software point of contact for the Training Integrated Product Team at Sikorsky.  Stephen Sholtis, another team member, served as the software supplier manager and cost account manager for the company's largest supplier.  Hamilton provided no evidence that she did similar tasks, nor did she name any person on her team whose role was more similar to her own.  And as for Vandermeys' statement that she initially thought that Hamilton was an L5, she later clarified in a sworn declaration that Hamilton was "not performing L5 or even L7 job responsibilities as a Software Supplier Manager."  These statements do not conflict with each other; the latter simply explains the former.

11

Hamilton argues that to accept the facts submitted by Sikorsky is to improperly weigh the evidence and draw inferences in favor of the movant instead of the non-movant on summary judgment.  But that's not so.  There is a difference between saying what the facts of the case are and viewing those facts in the light most favorable to Hamilton.  What Hamilton provided in her declaration are not factual statements but "conclusory allegations" of the sort we have repeatedly held "have no probative value."  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); see United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("An affidavit cannot be conclusory, but nothing in Rule 56 . . . prohibits an affidavit from being self-serving.") (citation omitted).

Hamilton takes exception to characterizing her statement as conclusory, but stating with nothing more that she "performed the same work as [her] white, male colleagues who were L5s" is, by definition, conclusory:  It "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (10th ed. 2014).  The underlying facts that Hamilton did not provide — but Sikorsky did — are (1) who the white, male colleagues were, (2) what work they performed, and (3) what work Hamilton performed.  And in the face of those underlying facts, which are all unfavorable to her, Hamilton's general statement has no probative value.  See Evans v. Books-A-Million, 762 F.3d 1288, 1296 (11th Cir. 2014) (upholding district court's decision

to strike portions of plaintiff's summary judgment affidavit as conclusory because plaintiff's statement that her male colleagues were making more money than she "did not provide specific, supporting facts regarding, for example, the amount of other employees' salaries compared to hers").

Hamilton did not provide any rebuttal evidence that created a genuine dispute of material fact on these issues.[2]  See Josendis, 662 F.3d at 1315 ("[T]he non-moving party cannot satisfy its burden if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact.") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511 (1986)).  The district court therefore did not err in granting summary judgment to Sikorsky when the undisputed evidence showed that it was not paying Hamilton less than her male coworkers "for equal work on jobs the performance of which require[d] equal skill, effort, and responsibility."  29 U.S.C. § 206(d).

## B.

Hamilton next argues that the district court erred by improperly weighing evidence on her claims of gender, race, and national origin discrimination in

---

[2]  This is true even if Aiken's deposition testimony that he "was told" about Hamilton's job responsibilities is considered.  In any event, we agree with the district court that it should not be because it was not based on personal knowledge.  Cf. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011) ("All affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence.").

13

violation of the Florida Civil Rights Act and 42 U.S.C. § 1981.  Claims of

discrimination under the FCRA and § 1981 are analyzed under the same

burden-shifting framework applied to claims under Title VII of the Civil Rights

Act of 1964.  See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 n.6 (11th

Cir. 2015).  A plaintiff typically establishes a prima facie case of discrimination by

"showing that she was a qualified member of a protected class and was subjected

to an adverse employment action in contrast to similarly situated employees

outside the protected class."  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d

1253, 1264 (11th Cir. 2010).  The district court ruled that Hamilton did not meet

this threshold showing because Hamilton could not show that she performed the

same work as her higher-paid colleagues or that her failure to be promoted was in

contrast to similarly situated employees who were either not female, not black, or

not Jamaican.

Hamilton makes one argument on appeal, so that is the only argument we

need consider.  See AT&T Broadband, 381 F.3d at 1320 n.14 ("Issues not raised

on appeal are considered abandoned.").  Her argument is that the district court

improperly weighed evidence by discounting the statement of a Sikorsky HR

manager that, according to Hamilton, "inferentially show[ed] that there [was]

evidence of discrimination."  The complete statement is this:  "Ms. Hamilton has

been an L7 for ten years; this is an excessive duration to be at this level unless

14

performance is not up to par.  Ms. Hamilton's performance has consistently been at fully competent level since 2010 so it does not appear that her performance is sub-par."

We cannot agree with Hamilton that this statement, standing alone (which is how Hamilton presents it), is enough to establish a prima facie case of discrimination on the basis of her race, gender, or national origin.  Nor do we agree that the district court improperly weighed evidence simply because it rejected Hamilton's assertion that the statement showed evidence of discrimination.  In fact, the district court considered the statement in light of all the evidence before it. That evidence included testimony by the same HR manager that she did not find evidence of discrimination, and included evidence presented by Sikorsky that showed that fourteen white males who entered Hamilton's job code after she did had also not been promoted to the next labor grade.  After considering all of the evidence, the court properly found that Hamilton had not made a prima facie showing.  And to the extent Hamilton's claim of discrimination is based on her being paid less than her male co-workers for the same work, that claim must fail for all the reasons discussed above.  The district court did not err by concluding likewise.

15

C.

We next turn to Hamilton's retaliation claim. She contends that the district court again improperly weighed evidence and drew inferences against her by crediting Sikorsky's explanation of events rather than hers. To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected expression, (2) she suffered "a materially adverse action," and (3) "there was a causal connection between the protected activity and the adverse action." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012) (quotation marks omitted).

The district court ruled that Hamilton waived any argument that the HR complaints she submitted on January 31, March 30, and June 29 of 2015 constituted the statutorily protected expression for which she was fired. Hamilton does not challenge that ruling on appeal. The district court then turned to Hamilton's assertion that the e-mails she sent to Lafferty on October 5 and 6 (when Lafferty was trying to meet with her but Hamilton refused to do so) constituted statutorily protected expression. The district court concluded that these e-mails did not because they stated only Hamilton's belief that Lafferty wished to discuss her complaint and otherwise contained only vague assertions of discrimination or unfair treatment. Hamilton does not challenge that ruling on appeal, either.

16

Hamilton instead focuses her argument solely on the district court's alternative ruling that Sikorsky articulated legitimate, non-retaliatory reasons for firing her and that she did not present evidence showing that those reasons were pretext for retaliation. But "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against h[er] is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [s]he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014). That is the situation here. Hamilton has not argued that the district court erred in finding that Hamilton's e-mails were not statutorily protected expression to begin with. That finding was enough to grant summary judgment to Sikorsky on her retaliation claim.[3]

## D.

That leaves Hamilton's argument that Sikorsky breached its contract with the United States under Executive Order 11246 by discriminating and retaliating

---

[3] Hamilton states in her brief that her final e-mail to Lafferty "clearly constitute[d] protected activity," but this passing reference in a section arguing against one of the district court's alternative rulings is not enough to preserve the argument. See Sapuppo, 739 F.3d at 681 (explaining that a claim is abandoned when a party "makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority").

17

against her.  Executive Order 11246 requires governmental contractors not to discriminate against any employee because of race, creed, color, or national origin, and to take affirmative action to ensure that employees are treated without regard to race, creed, color, or national origin.  Exec. Order No. 11246.

"[C]ourts have repeatedly held that executive order 11246 does not create a private cause of action for employees to enforce the equal opportunity clause in their employers' government contracts."  Eatmon v. Bristol Steel & Iron Works, Inc., 769 F.2d 1503, 1515 (11th Cir. 1985) (collecting cases).  We decline Hamilton's invitation to recognize such an action now.

**AFFIRMED.**

18