[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13448

_____

D.C. Docket No. 0:18-cv-62813-RS

CAROLINA ROSE MATAMOROS,

Plaintiff-Appellant,

versus

BROWARD SHERIFF'S OFFICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 25, 2021)

Before JILL PRYOR, NEWSOM, and MARCUS, Circuit Judges.

NEWSOM, Circuit Judge:

The Florida Civil Rights Act forbids employers from "discriminat[ing]

against any individual . . . because of such individual's . . . handicap[.]"  Fla. Stat.

§ 760.10(1)(a).  Carolina Matamoros alleged that her former employer, the Broward Sheriff's Office, violated the FCRA by discriminating against her not because of any "handicap" of her own, but because of her association with her son, who suffers from severe asthma.  Finding no support for that sort of "associational discrimination" claim in the FCRA's text or prior court decisions, the district court dismissed it, and the court later granted summary judgment to the Sheriff's Office on Matamoros's other claims under the FCRA and the federal Family and Medical Leave Act.

On appeal, Matamoros challenges both the dismissal of her associational-discrimination claim and the district court's grant of summary judgment on the others.  As to the former, Matamoros candidly asks us to work "a change in the law" and hold that the FCRA prohibits associational discrimination.  We must decline; accepting her invitation would take us well beyond a federal court's limited role in interpreting and applying state law.  We also hold that the district court properly rejected Matamoros's other claims.  Accordingly, we affirm.

**I**

**A**

Carolina Matamoros began working for the Broward Sheriff's Office as a communications operator in January 2010.  Her son suffered from severe asthma, and in March 2016 she took FMLA leave to care for him.  Later, Matamoros

2

learned that a part-time position had opened up. She requested that position but didn't get it. Matamoros then filed an internal grievance, which was denied. She then requested additional FMLA leave, which the Sheriff's Office refused. Although the Sherriff's Office ended up giving Matamoros a part-time position, it took several kinds of disciplinary action against her, ostensibly because she kept missing work. Eventually, the Sheriff's Office initiated an internal-affairs investigation into her attendance issues.

The investigation went a long way toward explaining Matamoros's attendance problems—it revealed that she had taken another job, despite her sworn statement that she hadn't done so. In one year, Matamoros had worked more for her other employer than for the Sheriff's Office, and on 17 occasions, she had called in sick or taken sick leave from the Sheriff's Office while going to work at her other job. Following the investigation, the Sheriff's Office suspended Matamoros without pay for two months.

Alleging that she had been subject to disparate treatment because of her son's disability, Matamoros filed a charge with the Equal Employment Opportunity Commission. While that charge was pending, the Sheriff's Office denied another request for FMLA leave and suspended Matamoros yet again. Matamoros also received a negative performance review. The EEOC then

dismissed Matamoros's charge. A third suspension followed. Finally, the Sheriff's Office terminated her.

## B

Matamoros sued the Sheriff's Office under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601. Specifically, her complaint alleged that the Sheriff's Office interfered with her rights under the FMLA by suspending her (Count I), discriminated and retaliated against her because of her association with her disabled son in violation of the FCRA (Counts II and III), and retaliated against her in violation of the FMLA (Count IV). The Sheriff's Office moved to dismiss Counts II, III, and IV. The district court granted that motion in part, dismissing Count II because, it held, the FCRA didn't support an associational-discrimination claim. But the court denied the balance of the motion to dismiss.

The Sheriff's Office then sought and obtained summary judgment on the remaining counts. With respect to Count III, the FCRA retaliation claim, the district court determined that Matamoros had failed to establish a causal nexus between the filing of her EEOC charge and her termination. In particular, the court emphasized that "there is no record evidence that the ultimate decisionmakers knew about" her EEOC charge. With respect to Count IV, the FMLA retaliation claim, the court held that Matamoros had failed to show that the Sheriff's Office's

4

proffered reasons for taking adverse actions against her were pretextual. In so holding, the court relied in part on the undisputed fact that Matamoros had worked another job and yet stated under oath that she had no other employment. And with respect to Count I, the FMLA interference claim, the court concluded that Matamoros had failed to show that she was entitled to FMLA leave because she hadn't worked enough hours to qualify for leave that year.

This is Matamoros's appeal.

## II

We are presented with four issues. The first—and most important—is whether the FCRA prohibits discrimination based on a plaintiff's association with a disabled individual. In the light of the statute's plain language—particularly when contrasted with that of the Americans with Disabilities Act, which references associational-discrimination claims expressly—we hold that it does not. We also hold that the district court correctly granted the Sheriff's Office summary judgment on Matamoros's FCRA retaliation, FMLA retaliation, and FMLA interference claims.[1]

---

[1] Each issue gets de novo review. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1056–57 (11th Cir. 2007) (order on Rule 12(b)(6) motion); *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 914 (11th Cir. 2013) (interpretation of a statute); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (order on summary judgment).

## A

We begin with Matamoros's associational-discrimination claim under the FCRA. To recap, Matamoros argues that the Sheriff's Office discriminated against her because of her association with her son, who has severe asthma and (all seem to agree) thus has a "handicap" within the meaning of the FCRA. She contends that the FCRA provides for such claims.

The FCRA's plain language forecloses Matamoros's position. The FCRA forbids employers from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). As relevant here, the key words are "discriminat[ing] against *any individual* . . . because of *such individual's* . . . handicap." *Id.* (emphasis added). Stated differently, the Florida legislature forbade employers from discriminating against an individual with a disability because of *that individual's* disability. But again, Matamoros doesn't claim to have any disability herself. Instead, she says that because her son does, her association with him brings her within the FCRA's ambit. But the provision at issue says nothing about individuals *associated with* people with disabilities. So,

as we read it, the FCRA's text provides no basis for Matamoros's associational-discrimination claim.[2]

Of course, "state courts are the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), and if the Florida courts had interpreted the FCRA to cover associational discrimination, we would be bound by that interpretation. But Matamoros cites—and we have found—no such state-court decision. She instead invites us to break new ground by reading the FCRA to provide for such claims implicitly because the ADA does so explicitly. *See* Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; *cf. Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) ("[A]ctions under the Florida Civil Rights Act are analyzed under the same framework as the ADA."). So holding, she argues, would be consistent with the FCRA's "general purposes" and in accord with the direction that it be "liberally construed." *See* Fla. Stat. § 760.01(2)–(3). She attempts to bolster that position with citations to Title VII caselaw. We find none of Matamoros's arguments persuasive.

For starters, looking to the ADA only reinforces the conclusion that the FCRA doesn't cover associational discrimination. Unlike the FCRA, the ADA expressly includes associational discrimination in its definition of what it means to

---

[2] Several federal district courts in Florida have reached the same conclusion. *See Cain v. Burger King Corp.*, 2018 WL 3869127, at *3 (S.D. Fla. Aug. 14, 2018) (collecting cases).

7

"discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(4). Specifically, the ADA says that such discrimination may consist of "excluding or otherwise denying equal jobs or benefits to a qualified individual *because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.*" *Id.* (emphasis added). Although enacted two years after the ADA, the FCRA contains no parallel provision. And in the decades since, the FCRA has remained unchanged in this respect. The Florida legislature may yet take inspiration from the ADA and add an associational-discrimination provision to the FCRA. But it hasn't, and we can't.

Our obligation to decide cases involving state law isn't a license to rewrite that law. We reiterate here what we have said before: "[A]s a federal court, we must be particularly reluctant to rewrite the terms of a *state* statute." *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4507 (3d ed., April 2021 update) ("[I]t is not the function of the federal court to expand the existing scope of state law."). We recently explained in another context that it would be improper for us "to create a wholly new doctrine, virtually out of whole cloth, [that] would work a profound change in Florida's law." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 967 (11th Cir. 2021). So too here. Mindful of our limited

8

role within a federal system, we won't go where neither Florida's legislature nor its courts have gone before.

Nor is a pioneering interpretation required by the FCRA's direction that courts should "liberally construe[]" its provisions. Matamoros is quite right that the FCRA says that it "shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved." Fla. Stat. § 760.01(3). The Florida Supreme Court has recognized as much. *See Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000). But the FCRA also says it "shall be construed according to the fair import of its terms[.]" *Id.* (quoting Fla. Stat. § 760.01(3)). Obedience to the first command can't entail disregard for the second. Here, because the "fair import" of the statutory language is that it addresses discrimination because of an individual's own disability, rather than someone else's, we needn't—and can't—read it otherwise.

The Florida Supreme Court's decision in *Delva v. Continental Group, Inc.*, 137 So. 3d 371 (Fla. 2014), does not advance Matamoros's liberal-construction argument. The court there held that an employer who discriminates against a woman because of her pregnancy has discriminated against her because of her sex within the meaning of the FCRA. *See id.* at 375. In so holding, the court eschewed the narrower concept of "sex" that the United States Supreme Court had embraced in *General Electric Company v. Gilbert*, which held that a disability-

benefits plan didn't discriminate on basis of "sex" in violation of Title VII by failing "to cover pregnancy-related disabilities." 429 U.S. 125, 145–46 (1976). Instead, the Florida Supreme Court reasoned that "discrimination based on pregnancy is in fact discrimination based on sex because it is discrimination as to a natural condition unique to only one sex and that arises because of an individual's sex." *Delva*, 137 So. 3d at 375 (cleaned up). As Matamoros explains, the FCRA's liberal-construction provision formed part of the Florida Supreme Court's rationale for that holding. *See Delva*, 137 So. 3d at 374.

*Delva*, though, can't bear the weight with which Matamoros saddles it. Even as the Florida Supreme Court there construed the term "sex" generously, it remained focused on whether the conduct alleged constituted discrimination against an individual *because of that individual's sex*. *See Delva*, 137 So. 3d at 374 ("The FCRA does, however, explicitly make it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex.'" (quoting Fla. Stat. § 760.10(1))). Accordingly, *Delva* can't help Matamoros, whose claim relates solely to another's protected characteristic. If we were tasked with determining, for instance, the breadth of the term "handicap"—if, say, the district court had concluded that severe asthma doesn't constitute a "handicap" within the meaning of the FCRA—then *Delva* might lead us to construe that term more expansively. But that's not this case. We

10

are instead faced with the question whether a prohibition of discrimination "because of *such* individual's . . . handicap" also forbids discrimination because of a *different* individual's handicap. *Delva* doesn't authorize so atextual an interpretation.

Matamoros's reliance on Title VII caselaw is likewise misplaced. It is true, of course, that "[t]he [FCRA's] stated purpose and statutory construction directive are modeled after Title VII of the Civil Rights Act of 1964," *Joshua*, 768 So. 2d at 435, and, accordingly, that "Florida courts apply Title VII caselaw when they interpret the FCRA," *Jones v. United Space All.*, *L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007). But those general propositions don't compel a decision for Matamoros here. Matamoros cites our decision in *Parr v. Woodmen of the World Life Insurance Co.*, 791 F.2d 888 (11th Cir. 1986), for the proposition that one needn't be a member of a protected class to state a claim for discrimination so long as one is discriminated against because of association with a member of a protected class. We're skeptical of Matamoros's reading of *Parr*. For one thing, *Parr*'s own language and logic point in the opposite direction: "Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race." 791 F.2d at 892. In any event, even if some form of this argument were eventually to persuade a Florida court to hold that an associational-discrimination claim not predicated in

11

any way on the plaintiff's own disability is nonetheless a form of discrimination on the basis of "such individual's . . . handicap," it would be improper for us, as a federal court, to reach that conclusion first. Decades back, the old Fifth Circuit recognized that "substantive innovation" in state law is something that ought to be left to state courts. *See Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980). That principle holds true today.[3]

\* \* \*

The district court didn't err in dismissing Matamoros's associational-discrimination claim. The FCRA's plain language doesn't support such a claim and no Florida court has concluded otherwise.[4]

---

[3] For similar reasons, we reject Matamoros's invocation of *Flagg v. AliMed, Inc.*, 992 N.E.2d 354 (Mass. 2013). There, the Supreme Judicial Court of Massachusetts interpreted statutory language similar to the FCRA's to prohibit associational discrimination. *Id.* at 365. It may be that the Florida courts will follow *Flagg*'s lead. But they haven't yet, and we can't do it for them.

[4] There is one loose end: At oral argument, Matamoros's counsel suggested (for the first time) that we certify to the Florida Supreme Court the question whether the FCRA covers associational discrimination. We decline to do so. We have said that "[w]hen substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996). But we have also said that we must "exercise discretion and restraint in deciding to certify questions to state courts." *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998). Among the considerations that inform our decision, "[t]he most important are the closeness of the question and the existence of sufficient sources of state law—statutes, judicial decisions, attorney general's opinions—to allow a principled rather than conjectural conclusion." *State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir. 1976); *see Escareno*, 139 F.3d at 1461. Here, the question isn't close, and the sources of Florida law—including that which has been "declared by its Legislature in a statute," *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)—more than suffice to allow us to reach a principled conclusion. So, although of course we'd defer

12

**B**

We can make quicker work of Matamoros's remaining arguments.  For the reasons that follow, we hold that the district court properly granted the Sheriff's Office summary judgment on Matamoros's FCRA retaliation, FMLA retaliation, and FMLA interference claims.

**1**

We first consider Matamoros's FCRA retaliation claim.[5]  We analyze FCRA claims based on circumstantial evidence under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires the plaintiff to first establish a prima facie case.  *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (ADA context); *see also Chanda*, 234 F.3d at 1221 (holding that claims under the FCRA are analyzed under the same framework as those under the ADA).  Under the FCRA, to make out a prima facie case of retaliation, the plaintiff must show (1) that she engaged in a statutorily protected expression, (2) that she suffered an adverse employment

---

to the Florida Supreme Court's interpretation of the FCRA, we won't exercise our discretion to solicit an interpretation in this case.

[5] Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A factual dispute exists where a reasonable factfinder could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  *Kernel Records Oy*, 694 F.3d at 1300.  In determining whether evidence creates a factual dispute, we draw reasonable inferences in favor of the nonmoving party.  *Id.* at 1301.  To overcome a motion for summary judgment, the nonmoving party must present more than a scintilla of evidence supporting its position.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

action, and (3) that a causal link existed between the adverse action and her protected expression. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001) (ADA context).

To establish a "causal link" for purposes of the third element, a plaintiff need only demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (ADA context) (emphasis omitted). A plaintiff makes this showing if she provides sufficient evidence that the decisionmaker became aware of the protected conduct and that there was a close temporal proximity between this awareness and the adverse action. *Id*. We've also held that causation may be established when a decisionmaker followed a biased non-decisionmaker's recommendation without independently investigating the basis for the complaint. *See Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1332 (11th Cir. 1999) (Title VII context); *see also Jones*, 494 F.3d at 1310 ("Florida courts apply Title VII caselaw when they interpret the FCRA."). In such a case, the recommender is using the decisionmaker as a conduit, or a "cat's paw," to give effect to the recommender's own discriminatory animus. *Stimpson*, 186 F.3d at 1332.

Matamoros hasn't made out a prima facie case. With respect to the first element, no one disputes that Matamoros's EEOC charge counts as statutorily

14

protected expression.[6]  And with respect to the second, no one disputes that the alleged retaliatory acts count as adverse actions.  But Matamoros has failed to establish the third element—a causal link between the protected activity and the adverse actions.  Specifically, she hasn't shown that any of her supervisors, the investigators, or members of the Professional Standards Committee who took the relevant adverse actions were aware that she had filed an EEOC charge, and all decisionmakers testified that they had no knowledge of it.  You can't retaliate against something you don't know exists.  And on this record, there is no evidence that the relevant decisionmakers knew of Matamoros's protected activity, so any adverse action taken against her couldn't have been in retaliation for it.  Without some showing of awareness, the causal chain falls apart and the claim fails.  *See Shotz*, 344 F.3d at 1180 n.30.  And her cat's-paw theory likewise fails, principally because she hasn't shown, or even suggested, the existence of any "biased

---

[6] On appeal, Matamoros makes an argument about retaliation based on an internal grievance that she filed, but in both her complaint and her response to the Sheriff's Office's motion to dismiss, the only "protected activity" that she cited was her EEOC charge.  Indeed, in her response to the motion to dismiss, she expressly noted that "Plaintiff's protected activity" was "filing a charge of discrimination."  It's well-settled that a "plaintiff may not amend her complaint through argument in a brief opposing summary judgment," *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004), and on appeal this Court "cannot allow Plaintiff to argue a different case from the case she presented to the district court," *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted).  Because Matamoros didn't properly raise the internal-grievance issue before the district court, we won't consider it here.  And the same is true for Matamoros's late-blooming assertion that the Broward Professional Standards Committee retaliated against her by considering her disciplinary history before sustaining her charges during an internal investigation.  *See id.* at 1331–32.

recommendations" from other Sheriff's Office employees to the relevant decisionmakers.[7]

In sum, the district court didn't err in granting summary judgment to the Sheriff's Office on Matamoros's FCRA retaliation claim because she couldn't show that any of the relevant decisionmakers knew of her protected activity or that other employees engineered her termination by manipulating the relevant decisionmakers. We therefore affirm the district court's grant of summary judgment on this claim.

**2**

Next, Matamoros's FMLA retaliation claim. The FMLA prohibits employers from interfering with, restraining, retaliating against, or denying "the exercise of or the attempt to exercise" any rights guaranteed under the Act. 29 U.S.C. § 2615(a). As for rights guaranteed under the Act, an employee who has worked for the employer for at least 12 months and at least 1,250 hours during the previous 12-month period is entitled to take up to 12 weeks of leave for a serious health condition that disables the employee from performing the functions of her job. *Id*. §§ 2611(2)(A), 2612(a)(1).

---

[7] Moreover, Matamoros's cat's-paw argument depends in part on her internal grievance being a protected activity, and she made that grievance a focal point of her case too late. *See supra* at note 6.

As we do with FCRA claims, we analyze FMLA retaliation claims based on circumstantial evidence under the *McDonnell Douglas* framework, which requires the plaintiff first to establish a prima facie case. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1207 (11th Cir. 2001). In the final part of *McDonnell Douglas*'s burden-shifting analysis, the plaintiff must show that the defendant's proffered legitimate, non-discriminatory reasons for its adverse action were actually false and that its true motivation was retaliatory. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) (Title VII context). One way a plaintiff can satisfy her burden is by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quotation marks omitted).

Even assuming that Matamoros established a prima facie case on her FMLA retaliation claim, we hold that she failed to prove that the Sheriff's Office's proffered reasons were pretextual. The Sheriff's Office explained that the various adverse actions of which Matamoros complained resulted from her attendance and tardiness issues and that she was denied the part-time position she sought because a different employee committed to a fixed part-time schedule before her. Matamoros admitted to her attendance issues and never challenged her tardiness

17

reports or sick-leave reviews. The Sheriff's Office also emphasized that Matamoros had testified under oath that she had no outside employment when, in fact, she had been employed elsewhere for some time. Finally, the Sheriff's Office also showed that others with less significant violations were terminated after fewer disciplinary actions.

Matamoros's counterarguments do nothing to undermine the Sheriff's Office's proffered reasons for taking adverse actions against her. For instance, she asserts that even if her sworn statement regarding outside employment wasn't truthful, it wasn't *knowingly* false or inaccurate. But the record shows otherwise. Matamoros worked for another employer for years, and sometimes even took sick leave from the Sheriff's Office so that she could work her other job. So when she was asked, "Do you have any other outside employment?" and she responded, "No," she *must* have known that wasn't true.

Here, the district court didn't err in granting summary judgment to the Sheriff's Office on Matamoros's FMLA retaliation claim because she didn't show that its reasons for taking adverse action were pretextual. We therefore affirm the district court's grant of summary judgment on this claim.

**3**

We turn, finally, to the grant of summary judgment on Matamoros's claim that the Sheriff's Office interfered with her rights under the FMLA by denying her

later requests to take FMLA leave. To establish that an employer interfered with her FMLA rights, an employee need only show by a preponderance of the evidence that she was entitled to the benefit that her employer denied. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010); *see Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166–67 (11th Cir. 2014) ("To assert a claim for interference under the FMLA, an employee must be entitled to the benefit denied." (quotation marks omitted)).

Matamoros's FCRA interference claim stumbles at the starting line because she can't show that she was entitled to FMLA leave. To qualify for that leave, Matamoros needed to have worked 1,250 hours in the prior year, *see* 29 U.S.C. §§ 2611(2)(A), 2612(a)(1), but she had worked fewer than 1,100 hours for the Sheriff's Office during that period. Accordingly, when Matamoros argues about what she might have been entitled to if she hadn't been suspended for 20 days, she misses the point—even if she hadn't suffered that suspension, she would have fallen short of the required number of hours to qualify for this sort of leave. *See Hurley*, 746 F.3d at 1166–67. We conclude, then, that the district court didn't err in granting summary judgment on Matamoros's FMLA interference claim because she didn't establish that she was entitled to FMLA leave.

\*       \*       \*

19

In sum, we hold (1) that Matamoros's associational-discrimination claim fails because the FCRA doesn't provide for such claims, (2) that her FCRA retaliation claim fails because she can't show that any relevant decisionmaker was aware of her EEOC filing or that another employee used a decisionmaker as a "cat's paw," (3) that her FMLA retaliation claim fails because she didn't prove that the Sheriff's Office's reasons for taking adverse actions against her were pretextual, and (4) that her FMLA interference claim fails because she didn't demonstrate that she was entitled to FMLA leave. Accordingly, we affirm the district court's orders.

**AFFIRMED.**