[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11218

Non-Argument Calendar

_____

NICOLE RAMOS,

Plaintiff-Appellant,

*versus*

DELPHI BEHAVIORAL HEALTH GROUP, LLC,
a Florida Limited Liability Company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-62039-JEM

_____

Before JORDAN, NEWSOM, and BLACK, Circuit Judges.

PER CURIAM:

Nicole Ramos appeals following the district court's entry of summary judgment in favor of her former employer, Delphi Behavioral Health Group (Delphi), in her lawsuit alleging interference and retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2615(a)(1), 2617(a).  She also challenges the district court's denial of her motion to strike certain materials submitted by Delphi before summary judgment was entered.  We address each argument in turn.  After review,[1] we affirm.

## I.  MOTION TO STRIKE

Ramos asserts the district court erred by finding she did not have standing to challenge whether a June 25 phone call between Stanley Laguerre, Isabelle Garcia, and Jackie Ayers was illegally recorded.  She also contends the district court erred by finding certain text messages between Ramos and Laguerre were not derived from the illegally recorded call because Delphi would not have known about the text messages without the June 25 recorded call.

---

[1] We review a district court's ruling on a motion to strike for an abuse of discretion.  *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014).  We review *de novo* the entry of summary judgment, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012).

Under the Federal Wiretap Act, it is unlawful for a person to intentionally intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). The contents of intercepted communications, or any evidence subsequently derived, cannot be presented in any proceeding in any court. *Id.* § 2515. However, it is lawful for an individual to intercept a communication if he is a party to it. *Id.* § 2511(2)(d). Section 2518 sets forth how to apply for authorization to intercept communications and allows an "aggrieved person" to move to suppress the contents of an intercepted communication if it was unlawfully intercepted. *See id.* § 2518(1), (10)(a). An aggrieved person is an individual who was a party to the intercepted communication or against whom the interception was directed. *Id.* § 2510(11).

The Florida Wiretap Act closely follows the Federal Wiretap Act and similarly proscribes intentionally intercepting any wire, oral, or electronic communication and excludes the use of such interceptions and evidence derived from those interceptions in court. Fla. Stat. §§ 934.03(1)(a), 934.06. One key difference between the federal and Florida acts is that, under Florida law, the prior consent of all parties is required for the recording to be legal. *Id.* § 934.03(2)(d). Like the federal law, § 934.09 sets forth how to apply for authorization to intercept communications and allows an "aggrieved person" to move to suppress the contents of an intercepted communication if it was unlawfully intercepted. *See id.* § 934.09(1), (10)(a). An aggrieved person is an individual who was a party to

the intercepted communication or against whom the interception was directed. *Id.* § 934.02(9).

The parties did not cite, and research did not uncover, a civil case applying the "aggrieved person" standard under Fla. Stat. § 934.09 or 18 U.S.C. § 2518. In *In re Cobo*, the Florida Supreme Court held that a grand jury witness was an "aggrieved person," as defined by the Florida Wiretap Act and, therefore, could suppress an illegally intercepted communication "involving him or which could or might tend to involve him with any offense other than those specifically authorized under the wiretap statute by" Fla. Stat. § 934.07. 287 So. 2d 43, 46-47 (Fla. 1973). However, the court did not explain why the witness was an aggrieved person or his relationship to the communication. *Id.* at 46-48. Further, police obtained the wiretap in question in the context of a criminal investigation, and the court justified the witness's standing by noting that Fla. Stat. § 934.07 was an exception to the constitutional right to privacy and was only authorized when investigating the statutorily enumerated offenses. *Id.* at 47-48.

The plaintiff bears the burden of establishing the constitutional requirements of standing: (1) that she suffered an "injury in fact"; (2) that there is a causal connection between the injury and the conduct cited; and (3) it is likely that the injury will be redressed by a favorable decision. *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (quotation marks omitted). Even if a plaintiff meets these constitutional requirements, she may lack standing under several prudential principles, including that she cannot assert the

legal interests of third parties. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979). However, a party may have "third-party standing" if she establishes that: (1) she suffered an injury in fact; (2) she has a close relation to the third party; and (3) there is some hindrance to the third party's ability to protect his own interests. *Harris v. Evans*, 20 F.3d 1118, 1122 (11th Cir. 1994) (citing *Powers v. Ohio*, 499 U.S. 400, 409-12 (1991)).

It is unclear whether the "aggrieved person" requirement under the Florida and federal wiretap statutes applies to civil cases. *See* Fla. Stat. 934.09; 18 U.S.C. § 2518. The parties have not cited, and research has not uncovered, a case applying this standard in the civil context. Additionally, the Florida Supreme Court in *Cobo* did not address third-party standing and its holding was limited to an "aggrieved person" in the context of a criminal investigation. *See* 287 So. 2d at 44-48. Regardless, Ramos did not establish she had third-party standing to argue Delphi violated Laguerre's rights in the June 25 phone call because she failed to allege both a sufficiently close relationship with Laguerre and a hindrance preventing him from asserting his legal rights. *See Gladstone Realtors*, 441 U.S. at 100; *Harris*, 20 F.3d at 1122.

Moreover, the district court did not clearly err in finding Delphi did not rely on the June 25 recorded phone call in its motion for summary judgment, because it only used text messages derived from a separate, unrecorded call between Laguerre, Garcia, and Ayers on June 27. *See United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2017) (stating when determining whether evidence is

excludable as "fruit of the poisonous tree" in the criminal context, we look to whether the subsequent evidence came about by the exploitation of the initial illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint); *Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006) (reviewing for clear error the district court's findings of fact). This finding was not clearly erroneous because Laguerre admitted to sending the relevant text messages after the unrecorded June 27 phone call, Garcia testified that Laguerre only mentioned his text messages with Ramos during the June 27 call, and the transcript of the recorded June 25 call shows that Ayers and Garcia referenced only unrelated text messages between Laguerre and Elaine McDonald, not the text messages involving Ramos. As a result, we are not left with the definite and firm conviction the district court made a mistake. *See Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (stating a factual finding is only clearly erroneous when this Court is "left with the definite and firm conviction that a mistake has been committed"). Accordingly, we affirm the district court's denial of Ramos's motion to strike.

## II. FMLA INTERFERENCE

Ramos contends the district court erred by finding she did not show that Delphi denied her a benefit under the FMLA or the grounds it gave for her termination were not related to her FMLA leave.

Under the FMLA, eligible employees are entitled to 12 work weeks of unpaid leave during any 12-month period for "a serious

health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave may be taken intermittently. *Id.* § 2612(b)(1). An employee must be reinstated to the position she held before she took FMLA leave. *Id.* § 2614(a).

The FMLA creates two types of claims—interference and retaliation. *Id.* § 2615(a)(1)-(2); *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000). To establish an employer interfered with her FMLA rights, an employee need only show by a preponderance of the evidence that she was entitled to a benefit that was denied by her employer. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010). A plaintiff is not denied a benefit under the FMLA when she receives all the leave she requests. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999). Moreover, where an employer did not deny leave time, the plaintiff cannot establish an FMLA interference claim, even where she was terminated and prevented from the continued use of such leave. *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020).

Even if a plaintiff establishes her FMLA rights were interfered with, those rights are not absolute. *Krutzig*, 602 F.3d at 1236. Therefore, while the employer's motives are irrelevant, it can defend against an interference claim based on an employee's termination by showing it fired her for reasons unrelated to FMLA leave. *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018). Although the employer has the burden of establishing this affirmative

defense at trial, the analysis at the summary judge stage is "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Id.* at 1331 & n.6.

The district court did not err in entering summary judgment in favor of Delphi on Ramos's FMLA interference claim because, by admitting it reinstated her after her FMLA leave and granted all her future leave requests, she failed to show it had denied her a benefit under the FMLA. *See Krutzig*, 602 F.3d at 1235. Thus, she failed to establish an FMLA interference claim, even though she was terminated and prevented from the continued use of FMLA leave. *See Munoz*, 981 F.3d at 1275.

Delphi also demonstrated it fired Ramos for reasons wholly unrelated to her FMLA leave. *See Batson*, 897 F.3d at 1331. The undisputed evidence showed Delphi cited unprofessional behavior in Ramos's termination letter and at her termination meeting. Delphi fired two other employees as a result of the same investigation and for similar misconduct. Although Ramos claims Delphi did not raise her drug use as a ground for dismissal until this suit, she admits Delphi has always cited as grounds for termination her inappropriate relationship with a subordinate and lying about it during a formal investigation. Delphi also did not cite known drug use by Laguerre and McDonald in their termination letters. While Michael Borkowski testified Ramos's drug use factored into his decision to fire her, he stated the primary basis for her termination was

21-11218                Opinion of the Court                9

her inappropriate relationship with a subordinate and lying about it during a formal investigation.  Ramos also admits to this inappropriate relationship, that she lied during the formal investigation, and that she used drugs.  Last, she conceded her job was vital to the company and it was reasonable to advertise it while she was on FMLA leave in case she could not return.  Given these undisputed facts, a reasonable jury could not conclude Delphi fired her for using FMLA leave.  *Batson*, 897 F.3d at 1331 & n.6.  Accordingly, we affirm the grant of summary judgment in this respect.

## III. FMLA RETALIATION

Ramos asserts the district court erred by finding she did not establish a causal link between her FMLA leave and her termination or raise a genuine dispute on whether Delphi's legitimate, non-discriminatory grounds for her firing were pretextual.

To establish an FMLA retaliation claim, an employee must show her employer intentionally discriminated against her for exercising a right guaranteed under the FMLA.  *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing her employer's actions "were motivated by an impermissible retaliatory or discriminatory animus."  *Id.* (quotations omitted).

Without direct evidence of retaliatory intent, an employee may proffer circumstantial evidence through the application of a three-step, burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.*  First, the employee must establish a *prima facie* case of FMLA retaliation by showing: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse decision; and (3) the decision was causally related to the protected activity.  *Id.*  Close temporal proximity between an employee's protected conduct and the adverse action is generally sufficient to create a genuine issue as to whether there is a causal connection.  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006).  However, temporal proximity, standing alone, cannot establish the causation element of a *prima facie* case.  *Strickland*, 239 F.3d at 1207 n.10.  Further, intervening acts or misconduct can sever the causal connection between a protected act and an adverse action.  *See Wascura v. City of S. Mia.*, 257 F.3d 1238, 1248 (11th Cir. 2001); *Fleming v. Boeing Co.,* 120 F.3d 242, 248 (11th Cir. 1997).

Second, if the employee successfully makes out a *prima facie* case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802-803.  Third, once an employer articulates a legitimate, non-discriminatory reason, the employee must show the employer's proffered reason was pretextual. *Id.* at 804.  The employee must show the reason was actually false and that discrimination or retaliation was the real reason behind the challenged action. *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1337 (11th Cir. 2021).  One way to satisfy this burden is by showing "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation marks omitted). At the summary judgment stage, we must ask "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331.

The district court did not err in entering summary judgment in favor of Delphi on Ramos's retaliation claim because she failed to establish a *prima facie* case of retaliation. Ramos failed to establish the causation element of her *prima facie* retaliation claim by pointing only to Borkowski's knowledge of her leave and the temporal proximity between her leave and termination. *See Hurlbert*, 439 F.3d at 1298. The discovery of her misconduct was an intervening factor that severed the causal link between her FMLA leave and her termination. *See Wascura*, 257 F.3d at 1248; *Fleming*, 120 F.3d at 1298. Ramos also admitted to the misconduct cited by Delphi—that she had an inappropriate relationship with her subordinate, lied during a formal investigation, and used drugs. Importantly, Delphi fired two other employees as a result of the same investigation and for similar misconduct.

Moreover, even if Ramos had presented a *prima facie* case of FMLA retaliation, she failed to raise a genuine dispute about whether Delphi's legitimate, non-discriminatory reasons were false, because she admitted they were true. *See Matamoros*, 2 F.4th

at 1337; *Batson*, 897 F.3d at 1331.  Even without this admission, the evidence she presented did not show pretext.  While she argues Delphi's failure to cite her drug use in her termination letter or at her termination meeting demonstrates pretext, Delphi similarly did not cite known drug use by Laguerre and McDonald in their termination letters.  Even if Ramos thinks Delphi should have cited her drug use, Delphi can cite any reason that is not unlawful.  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (stating an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous fact, or for no reason at all," as long as it is not an unlawful reason).  Further, Ramos concedes her position at Delphi was vital and it was reasonable for it to advertise her position to prepare for the possibility that she would not return from FMLA leave.  Finally, though Borkowski's draft email showed he was concerned about Ramos's ability to continue to perform in her position, it sought to  undergo an "interactive process" with her, which was meant to identify and overcome her limitations, consistent with federal laws protecting those with disabilities.  42 U.S.C. § 12116; 29 C.F.R. § 1630.2(o)(3).  Accordingly, we affirm in this respect as well.

**AFFIRMED.**